

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

VICTOR TORRES,

                      **Plaintiff,**

         *- against -*

DO IT BEST CORPORATION,

                    **Defendant.**

**07 CIV 230 (CLB)(LMS)**

**REPORT AND**
**RECOMMENDATION**

**TO:    THE ASSIGNED UNITED STATES DISTRICT JUDGE[1]**

Victor Torres ("Plaintiff"), proceeding <u>pro se</u>, filed a Complaint against Do It Best

Corporation ("Defendant") on January 11, 2007.  In his Complaint, Plaintiff asserts a claim of

discrimination pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§

2000e – 2000e-17.  Plaintiff maintains that Defendant, his former employer, terminated his

employment and subjected him to unequal terms and conditions of employment because of his

race (Puerto Rican), gender (male), color (black), and national origin (Hispanic).  Complaint ¶¶

4, 7.

    Following the completion of discovery, Defendant now moves for summary judgment on

Plaintiff's claim pursuant to Rule 56 of the Federal Rules of Civil Procedure ("FRCP").  For the

following reasons, I conclude, and respectfully recommend that Your Honor should conclude,

that Defendant's motion for summary judgment should be granted.

---

[1] The Honorable Charles L. Brieant, to whom this case was assigned, passed away on July 20, 2008.  It is expected that this case will be reassigned to a new District Judge within forty-five days.

1

Docket in case # 07 CV/CR 230
As:

Copies Mailed to Counsel of Record.

Date: 8 / 4 / 08   LMS/USMJ

I.      **BACKGROUND**

A.      **Summary of Relevant Facts**[2]

Plaintiff submitted a resume to Defendant on September 21, 2001, and signed a

verification that all of his statements were true and correct at that time.  Defendant's 56.1

Statement at ¶ 2.  The verification also included a provision that stated that if any of Plaintiff's

statements were not true, he could be terminated.  Id.  Plaintiff was hired to work for Defendant

as an order filler in October 2001.  Id. at ¶ 1.  Initially, Plaintiff worked in the mezzanine of

Defendant's facility.  Id. at ¶ 6.  Plaintiff bid to work in Section J of the facility, which is also

called the "flam room," early in his employment, but was unsuccessful.  Id. at ¶ 7.  The flam

room is separated from the warehouse of the facility by gates because it holds flammable

materials.  Id. at ¶ 6.  About two years after the start of his employment, however, Plaintiff bid on

a job in the flam room and was successful.  Id. at ¶ 7.

During his employment in the flam room, Plaintiff's job responsibilities included filling

orders for paint cans, oil cans, and other flammable materials.  Id. at ¶ 10.  Plaintiff's job

responsibilities also included the use of a tugger, which is a motorized pulling cart that

employees ride.  Id. at ¶ 12.  A tugger is assigned to each employee and is required to be signed

_____

[2] The facts set forth in this section are taken from: (1) the Complaint; (2) Defendant's
Answer; (3) Defendant's Memorandum of Law in Support of Motion Pursuant to Rule 56 of the
Federal Rules of Civil Procedure ("Defendant's Memorandum in Support") and the
accompanying Statement of Material Facts ("Defendant's 56.1 Statement"); (4) Plaintiff's
Memorandum of Law in Response to Defendant's Motion for Summary Judgment ("Plaintiff's
Memorandum in Opposition"); and (4) the evidence submitted by the parties in support of their
submissions, including deposition testimony.  Because Plaintiff did not submit a response to
Defendant's 56.1 Statement as required by Local Rule 56.1, the facts taken from Defendant's 56.1
Statement are deemed admitted.  See Gubitosi v. Kapica, 154 F.3d 30, 31 n.1 (2d Cir. 1998).
However, for the purpose of reviewing Defendant's motion for summary judgment, the facts in
this section are construed in the light most favorable to Plaintiff, the nonmoving party.

out every day. Id. at ¶ 13. Plaintiff's supervisor in the flam room was Chris Davidson ("Davidson"), a black Jamaican man. Id. at ¶¶ 8-9. Plaintiff also worked with a man named Felix Cholula ("Cholula"), who is Hispanic. Id. at ¶ 11. Cholula worked in the flam room as a high reach operator. Id.

On November 28, 2005, Cholula observed Plaintiff come from the back stairs of the mezzanine area and place a CD or MP3 player into his tugger. Id. at ¶ 15. Cholula reported the incident to his supervisor and, upon the supervisor's request, wrote a statement about the incident, which stated, "I Felix Cholula saw Victor Torres take a CD player from the Mezz and put in his tugger." Id. at ¶ 16. At about 11:45 a.m. that day, Plaintiff left his tugger in the flam room and met his wife in the parking lot for lunch. Id. at ¶ 17. While Plaintiff was having lunch, Davidson and Marci Spain ("Spain"), a "lead person," took a picture of the MP3 player and batteries that were in Plaintiff's tugger. Id. Later that day, Davidson questioned Plaintiff about the existence of the MP3 player in his tugger. Id. at ¶ 18. After being sent back to work, Plaintiff was summoned again, and was eventually placed on suspension pending an investigation. Id.

Nancy Harris ("Harris"), Defendant's Human Resources Manager, conducted an internal investigation of the incident. Id. at ¶ 19. Harris' investigation revealed that Plaintiff did not have authority to be in the mezzanine on the date of the incident and was not required to pick up an MP3 player in the course of his job duties that day. Id. at ¶ 20. Harris' investigation also revealed that although Davidson and Spain took a picture of the MP3 player in Plaintiff's tugger, the MP3 player and batteries later disappeared from the tugger. Id. at ¶¶ 22-23. On November 29, 2005, Harris attempted to contact Plaintiff by phone and left a message for him to call her.

Id. at ¶ 24.  On November 30, 2005, Harris called and left a message for Plaintiff again.  Id.  At

that time, Harris informed Plaintiff that if he did not call her back, she would consider Plaintiff

"off the clock."  Id.  On December 5, 2005, Harris spoke to Plaintiff about the events of

November 28, 2005, by telephone.  Id. at ¶ 25.  During the phone call, Plaintiff told Harris his

side of the story and also informed Harris that he did not want to return to work.  Id. at ¶ 26.

Harris told Plaintiff that his record would reflect that he resigned on November 30, 2005.  Id.

Harris also told Plaintiff that she would close the investigation because he was resigning.  Id. at ¶

27.  After the phone call Harris closed the investigation and notified Defendant to send

termination paperwork reflecting that Plaintiff had resigned.  Id.

  During Plaintiff's employment, Plaintiff made several verbal complaints about Jessica

Lozier ("Lozier"), a female order filler assigned to the flam room, in which he alleged that Lozier

had received a less strenuous workload than male employees.  Id. at ¶¶ 30-31.  Specifically,

Plaintiff complained that Lozier would be placed in the UPS packing area, which is considered

lighter work, after the work in the flam room was completed.  Id. at ¶ 32.  Plaintiff was typically

sent to other filling positions, while Lozier, who was trained in the Receiving and UPS

Departments, would be assigned to those departments.  Id. at ¶ 40.  Plaintiff believed that Lozier

received a lighter workload because Spain, the "lead person" who assigned their work, was

attracted to Lozier.  Id. at ¶¶ 32.  However, Plaintiff had informed Spain that he disliked working

in the Receiving and UPS Departments.  Id. at ¶ 39.

  On December 14, 2005, Plaintiff filed a claim for discrimination against Defendant

alleging that he had been discriminated against because he had not been allowed to return to

work after November 28, 2005, and because he had been given a disparate workload compared to

female employees with the same title. Id. at ¶ 34. After an investigation into Plaintiff's claims, the State Division of Human Rights concluded that Plaintiff did not present evidence that would lead a reasonable person to conclude that a violation of the Human Rights law had occurred and that Defendant had presented evidence that Plaintiff was terminated for a non-discriminatory reason. Id. at ¶ 35.

Plaintiff also applied for unemployment benefits. Id. at ¶ 36. His application was denied and Plaintiff appealed, but the Unemployment Insurance Appeal Board found that Plaintiff had resigned his employment and was thus ineligible for unemployment benefits. Id. However, the Unemployment Insurance Appeal Board reopened its investigation of Plaintiff's case on November 21, 2007. Plaintiff's Exhibit Q.

After the initiation of this case, Defendant discovered that several statements that Plaintiff made on his resume were not true. Defendant's Memorandum of Law at page 15; Defendant's 56.1 Statement at ¶¶ 3, 5. First, Defendant discovered that Plaintiff's statement that he left his employment with Mid-Hudson Legal Services because Mid-Hudson lost funding was not true; Plaintiff never worked for Mid-Hudson Legal Services. Id. at ¶ 3. Next, Defendant discovered that Plaintiff worked for Legal Services of the Hudson Valley and was terminated because of sexual misconduct, but Plaintiff had not included such information on his resume. Id. Additionally, Defendant discovered that Plaintiff was employed by Prisoners Legal Services, but he did not list such employment on his resume. Id. at ¶ 5. Finally, Defendant discovered that although Plaintiff stated that he had not been convicted of a felony within the past seven years, Plaintiff had been incarcerated through 1996, five years prior to his application. Id.

**B.**   <u>**Procedural History**</u>

Plaintiff initiated the instant civil action on January 11, 2007.  Docket entry 2.  Defendant

answered the Complaint on April 9, 2007.  Docket entry 10.  The Honorable Stephen C.

Robinson, to whom this case was then assigned, referred the matter to me for general pretrial

supervision on January 31, 2007.  Docket entry 3.  The case was reassigned to Judge Brieant on

September 18, 2007.  On December 17, 2007, Defendant made a motion for summary judgment.

Docket entries 17-20.  Plaintiff submitted his opposition to the motion on January 2, 2008.

Docket entry 22.  Defendant submitted a reply on January 25, 2008.  Docket entry 23.  On

January 29, 2008, Judge Brieant communicated to me that he wanted me to prepare a Report and

Recommendation on the instant motion.[3]

---

[3] On June 9, 2008, Judge Robinson received a letter from Plaintiff, which was thereafter forwarded to me.  In the letter, Plaintiff directs the Court's attention to an attached decision by the Honorable William J. Giacomo in <u>Torres v. Cholula</u>, Index No. 6484/2004, a related state court matter, which was issued in May 2008.  The decision denies the defendant's motion for summary judgment because the defendant did not attach a copy of the answer to the motion and because the defendant relied on unexecuted copies of Responses to Interrogatories and on plaintiff's unsigned deposition transcript.  Justice Giacomo stated that Plaintiff's unsigned deposition transcript was not admissible evidence and therefore could not be considered by the court.

In his letter to Judge Robinson, Plaintiff asked Judge Robinson to "[p]lease take notice that most of the documents and information provided to this court in the defendant's memorandum of law in support of its motion for summary judgment was [sic] also submitted in this action . . . ."  It should be noted that this Court is not bound by the state court decision.  Indeed, this Court does not know what documents were submitted by the defendant in the state court action in support of his motion for summary judgment.  However, I have reviewed the documents relied on by Defendant in this action and I find that, for the most part, they are appropriate for consideration here.  First, although the transcript of Plaintiff's deposition is unsigned, Plaintiff failed to object to this error with reasonable promptness, thereby waiving any objection to its use.  <u>See</u> Fed. R. Civ. P. 32(d)(4) ("An objection to how the officer . . . prepared, signed, certified, sealed, . . . or otherwise dealt with the deposition . . . is waived unless a motion to suppress is made promptly after the error or irregularity becomes known or, with reasonable diligence, could have been known.").  <u>See also</u> 8 Fed. Proc. Forms § 23:113 ("[T]he absence of prompt certification of a deposition under Fed. R. Civ. P. Rule 30(f) does not prevent the admission of a deposition where the adverse party has seen the deposition prior to trial, has a

6

## II.   DISCUSSION

### A.   The Standard for Dismissal Pursuant to Summary Judgment Under Rule 56 of the FRCP

Under Rule 56 of the FRCP, summary judgment should be "rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 320-23 (1986).

> Upon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried.  Failure to submit such a statement may constitute grounds for denial of the motion.

Local Civ. R. 56.1(a).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A trial judge may, therefore, grant summary judgment only if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law.  See Anderson, 477 U.S. at 250.  The inquiry performed is the threshold inquiry of determining whether there are any genuine factual issues that properly can be resolved only by a finder of fact.  Id.

Where a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P.

---

transcript of the deposition, and is fully aware of its contents.").  Second, all but one of the Responses to Interrogatories submitted by Defendant in support of its motion are signed, under penalty of perjury, by the witnesses.  See Defendant's Exhibits E and F.  In reaching my conclusion in this Report & Recommendation, I do not rely on the unsigned Response to Interrogatories by Felix Cholula.

56.  Under Local Rule 56.1(b), the papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short, and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried.  Local Civ. R. 56.1(b).  Summary judgment may be granted only "[i]f after discovery, the nonmoving party 'has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof.' "  Berger v. United States, 87 F.3d 60, 65 (2d Cir. 1996) (quoting Celotex, 477 U.S. at 323) (alteration in original).  Indeed, if the party opposing summary judgment does not respond to the motion, "summary judgment, if appropriate, shall be entered against the adverse party."  Fed. R. Civ. P. 56(e).  However, even where the nonmoving party fails to respond to a motion for summary judgment, the court

> may not grant the motion without first examining the moving party's submission
> to determine if it has met its burden of demonstrating that no material issue of fact
> remains for trial.  If the evidence submitted in support of the summary judgment
> motion does not meet the movant's burden of production, then summary judgment
> must be denied *even if no opposing evidentiary matter is presented*.

D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006) (quoting Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004)) (emphasis in original).

Moreover, a court should "constru[e] the evidence in the light most favorable to the nonmoving party and draw[] all reasonable inferences in its favor."  Mount Vernon Fire Ins. Co. v. Belize NY, Inc., 277 F.3d 232, 236 (2d Cir. 2002); Farias v. Instructional Sys., Inc., 259 F.3d 91, 97 (2d Cir. 2001); Quinn v. Green Tree Credit Corp., 159 F.3d 759, 764 (2d Cir. 1998); see also Anderson, 477 U.S. at 261 n.2.  Thus, "[o]nly when no reasonable trier of fact could find in

favor of the nonmoving party should summary judgment be granted." <u>Cruden v. Bank of New</u> <u>York</u>, 957 F.2d 961, 975 (2d Cir. 1992) (quoting <u>H.L. Hayden Co. v. Siemans Med. Sys. Inc.</u>, 879 F.2d 1005, 1011 (2d Cir. 1989)).

**B.     Defendant's Motion for Summary Judgment**

Defendant has moved for summary judgment arguing that it is entitled to summary judgment as a matter of law on Plaintiff's claim of discrimination against it.  <u>See</u> <u>generally</u> Defendant's Memorandum in Support.  Specifically, Defendant argues that Plaintiff can not establish a prima facie case of discrimination based on his separation from employment because he did not suffer an adverse employment action and the circumstances surrounding his separation from employment with the Defendant do not give rise to the inference of discrimination.  <u>Id.</u> at page 9-11.  Furthermore, Defendant argues that it has put forth a legitimate, non-discriminatory reason for its actions concerning Plaintiff and Plaintiff cannot establish that such reason is merely pretext.  <u>Id.</u> at pages 11-12.  Additionally, Defendant argues that Plaintiff cannot establish a claim of gender discrimination because he did not suffer unequal terms and conditions of employment.  <u>Id.</u> at 12-15.  Finally, Defendant requests that, if the Court denies its motion, the Court limit Plaintiff's damages to back pay up to the time when Defendant learned of Plaintiff's misrepresentations on his resume.  <u>Id.</u> at page 15.

Plaintiff opposes Defendant's motion, arguing that he suffered an adverse employment action and that his separation from employment with Defendant gave rise to an inference of discrimination.  Plaintiff's Memorandum in Opposition at pages Points I and II.  Plaintiff further argues that Defendant did not have a legitimate, non-discriminatory reason for its actions.  <u>Id.</u> at Point III.  Plaintiff argues that the evidence he has submitted supports his claim of discrimination

at Do It Best. Id. at Points IV-V. Additionally, Plaintiff states that Defendant failed to provide

him with documents that he demanded in discovery. Id. at Point VI. Finally, Plaintiff argues that

the evidence of his misrepresentations on his resume should not bar his recovery. Id. at Point

VII.

Title VII provides in pertinent part: "It shall be unlawful employment practices for an

employer . . . . to fail or refuse to hire or to discharge any individual, or otherwise discriminate

against any individual with respect to his [or her] compensation, terms, conditions, or privileges

of employment, because of such individual's race, color, religion, sex, or national origin." 42

U.S.C. § 2000e-2(a). Title VII discrimination claims are governed by the burden shifting scheme

laid out by the Supreme Court in McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 802-803

(1973). Dawson v. Bumble & Bumble, 398 F.3d 211, 216 (2d Cir. 2005). Accordingly, in order

to survive a motion for summary judgment, a plaintiff must first establish a prima facie case of

discrimination. Id. To establish a prima facie case of discrimination, the plaintiff must show that

he or she (1) is a member of a protected class, (2) was qualified for the position or satisfactorily

performed the duties of the position, (3) was subjected to an adverse employment action, and (4)

suffered an adverse action in circumstances giving rise to an inference of discrimination. Id. In

the Second Circuit, the burden of proving a prima facie case of discrimination is "minimal."

Patterson v. County of Oneida, 375 F.3d 206, 221 (2d Cir. 2004).

If the employee establishes a prima facie case of discrimination, the burden then shifts to

the defendant-employer to rebut the presumption of discrimination. See Dawson, 398 F.3d at

216. To rebut the presumption of discrimination, the defendant must "articulate some legitimate,

non-discriminatory reason" for the adverse employment action. Id. (internal citations omitted). If

10

the defendant-employer articulates a legitimate, non-discriminatory reason for the challenged

action, "the presumption of discrimination created by the prima facie case drops out of the

analysis, and the defendant 'will be entitled to summary judgment . . . unless the plaintiff can

point to evidence that reasonably supports a finding of prohibited discrimination.' " Id. (quoting

James v. N.Y. Racing Ass'n, 233 F.3d 149, 154 (2d Cir. 2000).  In other words, if the defendant-

employer carries its burden of showing a legitimate, non-discriminatory reason for its actions, the

plaintiff must "demonstrate by competent evidence that 'the legitimate reasons offered by the

defendant were not its true reasons, but were a pretext for discrimination.' " Patterson, 375 F.3d

at 221.

### 1)      Wrongful Termination Claim

Defendant does not dispute the first two prongs of Plaintiff's prima facie case of

discrimination—that Plaintiff is a member of a protected class and that Plaintiff was qualified for

and performed his job satisfactorily.  See generally Defendant's Memorandum in Support.

However, Defendant argues that Plaintiff did not suffer an adverse employment action because

he resigned and was not terminated.  Id. at pages 9-11.  Defendant also argues that Plaintiff has

not offered any evidence that his separation from employment, whether by resignation or

termination, arose under circumstances that give rise to the inference of discrimination.  Id. at

page 11.

"A plaintiff sustains an adverse employment action if he or she endures a 'materially

adverse change' in the terms and conditions of employment."  Galabya v. New York City Bd. of

Educ., 202 F.3d 636, 640 (2d Cir. 2000).  "To be 'materially adverse' a change in working

conditions must be 'more disruptive than a mere inconvenience or an alteration of job

11

responsibilities.' " Id. (quoting Crady v. Liberty Nat'l Bank & Trust Co., 993 F.2d 132, 136 (7th Cir. 1993)).  The action must have "an attendant negative result, a deprivation of a position or an opportunity."  Medwid v. Baker, 752 F. Supp. 125, 137 (S.D.N.Y. 1990), aff'd, 112 F. App'x 761 (2d Cir. 2004).  For example, "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities or other indices . . . unique to a particular situation" can be considered materially adverse.  Galabya, 202 F.3d at 640.  Thus, if Plaintiff was in fact terminated from his employment, he would be able to establish that he suffered an adverse action.  However, in compliance with Local Rule 56.1, Defendant filed a statement of undisputed facts which stated that Plaintiff resigned from his employment with Defendant during Ms. Harris' investigation of the November 28, 2005, incident.  Defendant's 56.1 Statement was supported by Ms. Harris' affidavit and her notes of her investigation which stated that Plaintiff informed her that he no longer wanted to work for Defendant and that he wanted a clean record.  Defendant's Exhibit D. Plaintiff did not submit a 56.1 Statement and therefore Defendant's statements, including the fact that Plaintiff resigned and was not terminated, are deemed to be admitted.  See Local Rule 56.1; see also Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party then fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.").

Moreover, although Plaintiff refers to his suspension under Point I of his Opposition, which is entitled "Plaintiff Did Suffer an Adverse Employment Action" (Plaintiff's Memorandum in Opposition at Point I), and in Defendant's 56.1 Statement, Defendant admits that prior to Plaintiff's separation from employment, Plaintiff was "placed on suspension pending an

investigation" (Defendant's 56.1 Statement at ¶ 18), I conclude, and respectfully recommend that Your Honor should conclude, that to the extent that Plaintiff is alleging that his suspension constituted an adverse action, Plaintiff's suspension does not constitute an adverse action.  In Joseph v. Leavitt, 465 F.3d 87 (2d Cir. 2006), the Second Circuit held that "an employee does not suffer a materially adverse change in the terms and conditions of employment where the employer merely enforces its preexisting disciplinary policies in a reasonable manner."  Id. at 91. The Second Circuit went on to hold that "administrative leave with pay during the pendency of an investigation does not, without more, constitute an adverse employment action."  Id. However, the Second Circuit cautioned that it was not holding "that suspensions during investigations will never rise to the level of an adverse employment action" and noted that "[a]n exceptionally dilatory investigation might constitute a material change in the terms and conditions of employment."  Id. at 92.  The Second Circuit stated that "[t]he relevant question is therefore whether the employer has simply applied reasonable disciplinary procedures to an employee or if the employer has exceeded those procedures and thereby changed the terms and conditions of employment."  Id. at 92 n.1.

In this case, there is no evidence in the record to suggests that the procedures followed during the investigation of Plaintiff's alleged theft of the MP3 player were unreasonable or dilatory.  The employee who witnessed the alleged theft was asked to write a statement, Plaintiff's supervisor and lead person investigated the allegation by taking a picture of the MP3 player in Plaintiff's tugger, Plaintiff was questioned about the event, and Human Resources was contacted regarding the event, all on the day that the alleged event took place.  Defendant's 56.1 Statement at ¶¶ 15-19.  Harris attempted to contact Plaintiff on the day following the alleged theft

13

and on November 30, 2005.  Defendant's 56.1 Statement at ¶ 24; Defendant's Exhibit D at ¶¶ 10-

11.  Harris had her final discussion with Plaintiff regarding his version of the event only seven

days after the event.  Defendant's 56.1 Statement at ¶¶ 25-27; Defendant's Exhibit D at ¶ 12.

Accordingly, I conclude, and respectfully recommend that Your Honor should conclude, that the

investigation was not so unreasonable or dilatory as to render Plaintiff's suspension pending the

investigation an adverse employment action.[4]  Therefore, I conclude, and respectfully

recommend that Your Honor should conclude, that Plaintiff has not established a genuine issue

of material fact with regard to his alleged wrongful termination under the third prong of his

prima facie case.[5]

        Furthermore, even if Plaintiff could establish that Plaintiff suffered an adverse action, I

conclude, and respectfully recommend that Your Honor should conclude, that Plaintiff has not

put forth any evidence from which a reasonable jury could conclude that his separation from

employment arose under circumstances that give rise to an inference of discrimination.  A

_____

        [4] Plaintiff states that he was not paid during the investigation.  See Plaintiff's
Memorandum in Support.  Indeed, it appears from Plaintiff's submissions that Plaintiff was not
paid for November 29, 2005, because his absence was considered "unexcused."  See Plaintiff's
Exhibit J.  However, this fact does not alter my conclusion that the suspension does not
constitute an adverse action because, as explained more fully supra, the procedures followed by
Defendant after the incident were reasonable and prompt.

        [5] Defendant also argues that collateral estoppel applies to the issue of whether Plaintiff
was terminated or whether he resigned because the Unemployment Insurance Appeal Board
determined that Plaintiff resigned.  Defendant's Memorandum in Support at pages 9-11.
However, as Plaintiff points out in his opposition, the Unemployment Insurance Appeal Board
reopened its decision.  Plaintiff's Memorandum in Opposition at Point I; Plaintiff's Exhibits P, Q,
and R.  Accordingly, it does not appear that the matter has been actually litigated and necessarily
decided as required under the doctrine of collateral estoppel.  See Shiro v. Farley, 510 U.S. 222,
233 (1994) (quoting 18 C. Wright, A. Miller, & E. Cooper, Federal Practice & Procedure § 4421,
p. 192 (1981) (" 'Issue preclusion attaches only to determinations that were necessary to support
the judgment entered in the first action.' ").

plaintiff may establish the fourth prong of his or her prima facie case of discrimination by, inter

alia, showing an employer's criticism of the plaintiff's work "in ethnically degrading terms," an

employer's "invidious comments" about members of the protected class to which plaintiff

belongs, the sequence of events leading up to the adverse action, or an employer's more favorable

treatment of employees not in plaintiff's protected class. See Chambers v. TRM Copy Ctrs.

Corp., 43 F.3d 29, 37 (2d Cir. 1994). Plaintiff has not submitted any evidence that he

experienced discriminatory animus in the form of statements about his membership in a

protected class or actions taken on the basis of such membership, nor has Plaintiff shown that

Defendant treated other employees not in his protected class more favorably in disciplinary

actions than they treated him during the investigation of his alleged theft. Indeed, at least two of

the people involved in the events leading up to Plaintiff's separation from employment are

members of a protected class themselves. Defendant's 56.1 Statement at 8-11; Defendant's

Exhibit C at pages 60, 120. Plaintiff's supervisor, Davidson, is black, and Cholula is Hispanic.

Id. Additionally, Plaintiff has not pointed to anything in the events leading up to Plaintiff's

separation from employment that would lead a rational jury to conclude that Plaintiff's separation

from employment was based on discrimination.

In support of his claim of discrimination, Plaintiff submits pictures of Defendant's Board

of Directors, Executive Management, and retail service center managers, noting that "not one

black or Hispanic person are [sic] represented in these positions by Do It Best." Plaintiff's

Memorandum in Opposition at Point V; Plaintiff's Exhibits L, M, and N. Plaintiff also submits a

sheet that he claims is a list of all of the lead persons hired in the last seven years by Defendant

and notes that only one black person has been selected for the position and no Hispanic person

has ever been selected for the position.  Plaintiff's Memorandum in Opposition at Point V;

Plaintiff's Exhibit D.  Such statistical evidence, however, without other evidence indicative of

bias, is not sufficient to raise an inference of discrimination.  <u>See</u>, <u>e.g.</u>, <u>Sorlucco v. New York</u>

<u>City Police Dept.</u>, 971 F.2d, 864, 872 (2d Cir. 1992).  In light of Plaintiff's complete lack of

evidence supporting an inference of discrimination, therefore, I conclude, and respectfully

recommend that Your Honor should conclude, that no reasonable jury could find for Plaintiff

under the fourth prong of his prima facie case of discrimination.

 In any event, even if Plaintiff could show that he suffered an adverse action and that his

separation from employment arose in circumstances giving rise to an inference of discrimination,

Defendant has offered a legitimate, non-discriminatory reason for ending Plaintiff's employment;

namely, Plaintiff's alleged theft or misuse of company property.  Defendant's Memorandum in

Support at pages 11-12.  In support of its motion, Defendant explained in detail the investigation

that Harris conducted after Cholula submitted his statement and the incident was reported to

Human Resources.  Because the burden on Defendant to show a legitimate, non-discriminatory

reason for its actions is one of production, not of persuasion, <u>Reeves v. Sanderson Plumbing</u>, 530

U.S. 133, 142 (2000), such evidence is sufficient to warrant summary judgment for Defendant if

Plaintiff cannot put forth evidence indicating that Defendant's reason is pretext and that the real

reason for Plaintiff's separation from employment is discrimination.  <u>See</u>, <u>e.g.</u>, <u>Crews v. Trs. of</u>

<u>Columbia Univ.</u>, 452 F. Supp.2d 504, 523 (S.D.N.Y. 2006) (finding the plaintiff's theft to be a

legitimate, non-discriminatory reason for plaintiff's termination); <u>see also</u> <u>Sergilus v. Covenant</u>

<u>House Under 21</u>, No. 96 Civ. 6210 (JSM), 1999 WL 717274, at *1-2 (S.D.N.Y. Sept. 15, 1999)

(same); <u>Fierro v. Saks Fifth Ave.</u>, 13 F. Supp. 2d 481, 489-90 (S.D.N.Y. 1998) (same).  Just as

Plaintiff has failed to offer sufficient evidence of circumstances giving rise to an inference of

discrimination, Plaintiff has failed to offer any evidence showing that Defendant's reason for its

actions was mere pretext and that the real reason for Plaintiff's separation from employment was

his race, national origin, color, or gender.  Accordingly, I conclude, and respectfully recommend

that Your Honor should conclude, that even if Plaintiff could show a prima facie case of

wrongful termination, Defendant would be entitled to summary judgment on this claim because it

has offered a legitimate, non-discriminatory reason for Plaintiff's separation from employment,

and Plaintiff has failed to raise a genuine issue of material fact with regard to the reason being

mere pretext.

### 2) *Disparate Treatment*

In addition to his claim of wrongful termination, Plaintiff also bases his discrimination

claim upon unfair treatment in the terms and conditions of his work environment.  See Complaint

at ¶ 4.  Specifically, Plaintiff alleges that he was discriminated against on the basis of his gender

when his co-worker, Jessica Lozier, was sent to more preferable areas for work than he was, and

that Lozier received this preferential treatment because a supervisor was interested in Lozier.

Plaintiff's Memorandum in Support at pages 1-2, Point IV.

As an initial matter, I conclude, and respectfully recommend that Your Honor should

conclude, that Title VII does not protect against the type of claim Plaintiff is making.  The

Supreme Court has instructed that the critical issue in a gender discrimination claim under Title

VII "is whether members of one sex are exposed to disadvantageous terms or conditions of

employment to which members of the other sex are not exposed." Oncale v. Sundowner

Offshore Servs., Inc., 523 U.S. 75, 80 (1998).  Indeed, although Title VII provides protection

from "discrimination on the basis of sex," the Second Circuit has held that the meaning of the word "sex" under Title VII does not encompass "sexual liaisons" and "sexual attractions," but is limited to "gender." DeCintio v. Westchester County Med. Ctr., 807 F.2d 304, 306-308 (2d Cir. 1986). Thus, the Second Circuit has held that claims of disparate treatment "premised not on one's gender, but rather on a romantic relationship between an employer and a person preferentially hired" are not cognizable under Title VII. Id. Specifically, in DeCintio v. Westchester Medical Center, the plaintiffs, male respiratory therapists, brought a discrimination claim when a female respiratory therapist was hired for a new position because of her "special relationship" with the Program Administrator of the Respiratory Therapy Department. Id. at 305-306, 308. The Second Circuit noted that the plaintiffs did not "claim that they or any other staff members, including [the hired employee] were forced to submit to [the Administrator's] sexual advances in order to win promotion," but rather the plaintiffs were claiming that their professional lives were impacted by a private affair between the hired employee and the Program Administrator. Id. at 308. After reviewing the statutory language and legislative history of Title VII, as well as Title VII case law, the Second Circuit stated that it could adduce "no justification for defining 'sex,' for Title VII purposes, so broadly as to include an ongoing, voluntary, romantic engagement." Id. at 307. In finding that such a complaint did not constitute a Title VII claim, the Second Circuit concluded that "voluntary, romantic relationships cannot form the basis of a sex discrimination suit under . . . Title VII . . . ." Id. at 308.

Although in the Complaint Plaintiff alleges that he was treated differently than a female employee because of his gender, Plaintiff's deposition testimony reveals that, like the plaintiffs in DeCintio, Plaintiff's gender discrimination claim is really premised on the fact that two women

18

received preferential treatment because of Spain's sexual attraction to them.  Complaint at ¶ 8;
Defendant's Exhibit C at pages 106-109.  Specifically, in his deposition testimony, Plaintiff
stated that Spain would "take Jessica Lozier out of the flam room order filling position and
send[] her to UPS" because Spain had a "sexual attraction" to Lozier.  Id. at page 107.  In
addition, Plaintiff stated that Spain also took another employee, Wendy Luca ("Luca"), out of her
area and assigned her to the UPS area because Spain had "a fetish" for Lozier and Luca.  Id. at
page 109.  As explained supra, according to Plaintiff, the UPS area was a more preferable
placement because it involved easier work.  Id. at page 77.  Nowhere in the Complaint or
Plaintiff's deposition does Plaintiff claim that Luca and Lozier were able to obtain the more
favorable work because they acquiesced to Spain's sexual advances.  Thus, although on its face
Plaintiff's claim seems to allege that he, as a member of one sex, was treated differently than
members of another sex, Plaintiff's deposition testimony reveals that the disparate treatment was
based on sexual attraction and not on gender discrimination.  Under DeCintio, such a claim is not
cognizable under Title VII.  Accordingly, I conclude, and respectfully recommend that Your
Honor should conclude, that Plaintiff cannot establish a Title VII gender discrimination claim.

Even if, however, Plaintiff's claim was based on gender discrimination, I conclude, and
respectfully recommend that Your Honor should conclude, that Plaintiff could not make out a
prima facie case of discrimination based on disparate treatment because Plaintiff could not show
that he suffered an adverse employment action.  As explained supra, "[a] plaintiff sustains an
adverse employment action if he or she endures a 'materially adverse change' in the terms and
conditions of employment."  Galabya, 202 F.3d at 640.  "To be 'materially adverse' a change in
working conditions must be 'more disruptive than a mere inconvenience or an alteration of job

19

responsibilities.' " Id. (quoting Crady v. Liberty Nat'l Bank & Trust Co., 993 F.2d 132, 136 (7th Cir. 1993)). The action must have "an attendant negative result, a deprivation of a position or an opportunity." Medwid v. Baker, 752 F. Supp. 125, 137 (S.D.N.Y. 1990), aff'd, 112 F. App'x 761 (2d Cir. 2004). In Young v. Rogers & Wells LLP, No. 00 Civ. 8019 (GEL), 2002 WL 31496205 (S.D.N.Y. Nov. 6, 2002), for example, the plaintiff claimed that she suffered an adverse employment action when she was assigned more work than white employees in similar positions. Id. at *5. In concluding that her claim of more work did not constitute an adverse employment action, the court stated that while a "disproportionately heavy workload could perhaps be an adverse action, if the additional work significantly changed the employee's responsibilities so as to diminish that worker's role or status, or exposed the worker to dangerous or extreme conditions not appropriate to her [or his] job classification[,]" the plaintiff had made "at best a general complaint of more work." Id.

Like the plaintiff in Young, Plaintiff here makes at best a general complaint of more work. Although he states that the work given to Lozier was lighter and easier than the work he was assigned to, he does not attempt to explain why the work was lighter or easier, or offer any other evidence of how the work he was assigned to changed his pay, status, or title, or impacted his career in any way. Accordingly, I conclude, and respectfully recommend that Your Honor should conclude, that Plaintiff's assignment to what he alleges was more difficult work did not constitute a materially adverse employment action sufficient to establish the third prong of Plaintiff's prima facie case of disparate treatment.

## C.     After-Acquired Evidence

Because I have concluded that Defendant is entitled to summary judgment under

Plaintiff's claim of discrimination, I find no reason to address Defendant's request to limit Plaintiff's recovery based on after-acquired evidence.

**D.     Plaintiff's Discovery Issue**

In his Memorandum in Opposition, Plaintiff argues that Defendant withheld documents that he requested in his First Request for Production of Documents.  Plaintiff's Memorandum in Opposition at Point VI.  Specifically, Plaintiff claims that he asked for the daily assignment sheets used by Marci Spain to assign workers to different departments so that he could demonstrate to the Court that Spain assigned Lozier to areas with lighter work on "countless" occasions in support of his gender discrimination claim.  Id.  Such a claim is governed by the Discovery Order issued in this case on May 2, 2007.  Docket entry 12.  Under the Discovery Order, Plaintiff had five business days to bring his opposition to Defendant's document production to the Court's attention, after attempting to reach an amicable resolution with Defendant.  Id. at page 1.  The Discovery Order expressly states that "[a]ny objection to discovery which is not raised within these time limitations will be waived."  Id. at page 2. Accordingly, because Plaintiff failed to raise his objection to Defendant's production of documents in a timely manner, such objection is waived.

In any event, even if the Court reopened discovery and ordered Defendant to turn over the daily assignment sheets, I conclude, and respectfully recommend that Your Honor should conclude, that such evidence would not create a genuine issue of material fact with respect to Plaintiff's gender discrimination claim.  As I concluded infra, Plaintiff's gender discrimination claim fails not because Plaintiff was unable to show a genuine issue of material fact regarding whether Spain sent Lozier to other departments more frequently than Plaintiff, but because

Plaintiff's complaint of favoritism based on sexual attraction is not protected by Title VII and because Plaintiff did not establish a genuine issue of material fact with regard to whether he suffered an adverse action.

**III.   CONCLUSION**

For the above stated reasons, I conclude, and respectfully recommend that Your Honor should conclude, that Defendant's motion for summary judgment should be granted.

**IV.   NOTICE**

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have ten (10) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(d), or a total of thirteen (13) working days, see Fed. R. Civ. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation.  Such objections, if any, shall be filed with the Clerk of the Court with an extra copy delivered to the chambers of the undersigned at the United States Courthouse, 300 Quarropas Street, White Plains, New York, 10601.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be directed to the Clerk of the Court.

Dated: August 1, 2008
    White Plains, New York
    Respectfully Submitted,

Lisa Margaret Smith
United States Magistrate Judge
Southern District of New York

22